# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID No. 1906010188 A&B |
| | ) | |
| PAUL R. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 1, 2023
Decided: June 27, 2023

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED.

Colleen E. Durkin, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Benjamin S. Gifford IV, Esquire, Rule 61 Attorney for Defendant Kareem B. Bradley

PARKER, Commissioner

This 27th day of June 2023, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

1.    On June 27, 2019, Defendant Paul Williams was arrested and charged with Home Invasion, Robbery First Degree, Possession of a Firearm During the Commission of a Felony, Assault Second Degree, and Criminal Mischief.

2.    On August 5, 2019, a grand jury indicted Defendant Paul Williams on these charges along with Possession of a Firearm by a Person Prohibited ("PFBPP"), Carrying a Concealed Deadly Weapon and Aggravated Menacing.

3.    The PFBFF charge was severed from the remaining charges and was to be tried after the other charges with a bifurcated jury.[1]

4.    The charges stemmed from an incident that occurred on June 15, 2019.[2] Williams was invited to the victim's residence. They had recently met and shared a mutual interest in cars. The victim thought he had made a new friend and invited Williams over to his residence that day. Williams was at the victim's residence for about 10-20 minutes, when he pulled out a gun and demanded the victim's property.[3] The victim was not immediately cooperative and did not immediately turn over his property. Williams shot his gun at the glass table and the glass from the table

---

[1] As to Cr.ID. No. 1906010188A- D.I. 25; As to Cr. ID. No. 1906010188B – D.I. 2.
[2] August 28, 2020 Sentencing Transcript, at pgs. 5-7.
[3] *Id.*

shattered and kicked up and hit the victim in the face.[4]  The victim had a laceration above his eye and was transported to the hospital.  Williams stole $300 in cash.[5]

5.      On October 21, 2019, Williams filed a Motion to Suppress seeking to exclude the identification of him as the assailant by the victim, Eric Maloney, and by Maloney's girlfriend (who was also in the residence at the time of the incident). Following a hearing on the suppression motion, on January 6, 2020, the Superior Court denied the motion.[6]  In denying the suppression motion, the Superior Court held that the out-of- court identification procedure employed was not impermissibly suggestive, and therefore, Maloney's and Maloney's girlfriend's out-of-court and prospective in-court identifications of Williams were admissible.[7]

6.      On December 9, 2019, Williams orally moved the Court to allow him to proceed *pro se.*[8] A hearing was conducted on the issue on December 17, 2019.  At the hearing Williams conceded that he would not be able to adequately represent himself at trial.  Consequently, the Court denied Williams' request to proceed *pro se.*[9]

---

[4] *Id.*
[5] *Id.*
[6] *State v. Williams,* 2020 WL 240206 (Del.Super. 2020).
[7] *Id.* at 5.
[8] Cr.ID. No. 1906010188A- D.I. 26.
[9] Cr.ID. No. 1906010188A- D.I. 27.

2

7.     Williams' trial was scheduled to begin on January 14, 2020.  If convicted of all the indicted charges, Williams was facing a minimum-mandatory sentence of at least 19 years and up to a maximum of over 100 years of incarceration.[10]

8.     At his final case review, on January 6, 2020, Williams accepted a plea offer by the State.  The State agreed to amend the first-degree robbery charge, which carried a minimum-mandatory sentence of five years, down to a second-degree robbery charge, which carried no minimum sentence.[11]  Williams pled guilty to two offenses:  Robbery in the Second Degree (no minimum mandatory sentence) and PFBPP (five year minimum mandatory sentence).[12]  As part of the plea agreement, the State agreed to cap its sentence recommendation to 7 years of Level V time.  All the remaining charges in the indictment were to be dismissed.

9.     On January 6, 2020, the Court conducted a full colloquy and determined that Williams' plea was voluntarily entered and accepted the parties' plea agreement. Sentencing was deferred so that a presentence investigation report could be obtained.

10.     Prior to sentencing, Williams filed a *pro se* motion to withdraw his guilty plea and a request to file for ineffective assistance of counsel.[13]

---

[10] January 6, 2020 Plea Transcript, at pgs. 4-7 (home invasion- 6 year minimum; robbery in the first degree- 5 year minimum due to PA robbery conviction in 2008; PFBPP- 5 year minimum due to PA robbery conviction in 2008; PFDCF- 3 year minimum); Cr.ID. No. 1906010188A-D.I. 59 (Appendix to Motion to Withdraw)-letter dated October 23, 2019 detailing the charges and the sentence ranges, at pgs. A089-090.
[11] January 6, 2020 Plea Transcript, at pg. 7-8.
[12] Cr.ID. No. 1906010188A- D.I. 28.
[13] Cr.ID. No. 1906010188A- D.I. 33-37.

11. Williams later notified the Court that he no longer wished to pursue his motion and requested that the matter be scheduled for sentencing.[14]

12. On August 28, 2020, Williams was sentenced to the minimum mandatory five years at Level V for the PFBPP offense and, for the robbery conviction, three years at Level V suspended immediately for six months at Level IV followed by eighteen months at Level III.[15] Thus, Williams was sentenced to a total of 5 years at Level V, followed by six months at Level IV, followed by 18 months at Level III.

13. Williams did not file a direct appeal of his conviction or sentence.

14. On November 19, 2020, Williams filed a *pro se* Motion for Sentence Reduction/Modification.[16] By letter dated January 31, 2021, Williams asked the Court to grant his request for a sentence reduction due to concerns surrounding COVID-19.[17] On February 23, 2021, the Court denied Williams' motion for a sentence reduction/modification.[18]

15. On July 28, 2021, Williams filed a *pro se* Motion for Correction of Illegal Sentence.[19] On December 10, 2021, the Court denied the motion.[20]

---

[14] Cr.ID. No. 1906010188A- D.I. 38.
[15] Cr.ID. No. 1906010188A- D.I. 38 & 39.
[16] Cr.ID. No. 1906010188A- D.I. 42.
[17] Cr.ID. No. 1906010188A- D.I. 43.
[18] Cr.ID. No. 1906010188A- D.I. 44.
[19] Cr.ID. No. 1906010188A- D.I. 45.
[20] Cr.ID. No. 1906010188A- D.I. 50.

## RULE 61 MOTION AND
## RULE 61 COUNSEL'S MOTION TO WITHDRAW

16.   On August 20, 2021, Williams filed a *pro se* motion for postconviction relief and a motion for appointment of counsel.[21]  In the subject motion, Williams raised six claims.  The Superior Court granted Williams' motion for the appointment of counsel.[22]

17.   In June 2022, counsel was appointed to represent Williams in his Rule 61 motion.[23]

18.   On September 23, 2022, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(7).[24]  Superior Court Criminal Rule 61(e)(7) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw.  The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

19.   In the motion to withdraw, Williams' Rule 61 counsel represented that, after undertaking a thorough analysis of Williams' claims, counsel determined that the

---

[21] Cr.ID. No. 1906010188A- D.I. 46.
[22] Cr.ID. No. 1906010188A- D.I. 48-49.
[23] Cr.ID. No. 1906010188A- D.I. 54.
[24] Cr.ID. No. 1906010188A- D.I. 56-59.

claims have no merit and that counsel cannot ethically advocate for any claim for relief.[25]

20. On September 23, 2022, Williams' Rule 61 counsel advised Williams of his motion to withdraw and advised that he had the right to file a response thereto within 30 days, if Williams desired to do so.[26]

21. In response, Williams requested the appointment of another Rule 61 attorney.[27] The request for the appointment of a second Rule 61 attorney was denied.[28]

22. In this Rule 61 motion, the record was enlarged and Williams' trial counsel was directed to submit an Affidavit responding to his ineffective assistance of counsel claims. The Affidavit was submitted on November 28, 2022.[29]

23. On May 1, 2023, this matter was referred to the undersigned Commissioner to assist in the resolution of Williams' Rule 61 motion.[30]

24. In order to evaluate Williams' Rule 61 motion and to determine whether his Rule 61 counsel's motion to withdraw should be granted, the court should be satisfied that Rule 61 counsel made a conscientious examination of the record and the law for claims that could arguably support Williams' Rule 61 motion. In

---

[25] See, Cr.ID. No. 1906010188A- D.I. 58, pgs. 1, 28, 29.
[26] Cr.ID. No. 1906010188A- D.I. 56, 58 at pg. 28.
[27] Cr.ID. No. 1906010188A- D.I. 60.
[28] Cr.ID. No. 1906010188A- D.I. 62.
[29] Cr.ID. No. 1906010188A- D.I. 61.
[30] Cr.ID. No. 1906010188A- D.I. 64.

6

addition, the court should conduct its own review of the record in order to determine whether Williams' Rule 61 motion is without merit.[31]

25. For the reasons set forth below, the six claims raised in Williams' Rule 61 motion were waived upon the entry of the plea. Some of the claims are also procedurally barred. All of the claims are without merit.

## Williams' Claims Were Waived Upon the Entry of His Plea

26. A defendant is bound by his answers on the guilty plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[32] In the subject action, the Truth-in-Sentencing Guilty Plea Form, Plea Agreement and plea colloquy reveal that Williams knowingly, voluntarily and intelligently entered a guilty plea.

27. At the time of the plea, Williams represented that he had reviewed the plea agreement and Truth-in-Sentencing Guilty Plea Form with his attorney, that he was satisfied with his attorney's representation, and that he understood that he was facing a prison term of between 5 years minimum-mandatory up to a maximum of 20 years in prison, with a prison sentence recommendation by the State capped at 7 years.[33]

---

[31] *Matos v. State*, 2015 WL 5719694, *2 (Del.).

[32] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).

[33] January 6, 2020 Plea Transcript, at pgs. 13-14; Plea Agreement dated January 6, 2020; Truth-in-Sentencing Guilty Plea Form dated January 6, 2020.

28. At the plea hearing, Williams represented that he freely and voluntarily decided to plead guilty to the two charges comprising the plea agreement, that nobody made any promises as to what his sentence would be, and that nobody forced or threatened him to enter into the plea.[34]

29. At the plea hearing, Williams admitted that he was guilty of the charges in the plea agreement.[35]

30. Williams represented that he was satisfied with his counsel's representation, that his counsel fully advised him of his rights, and that he understood the consequences of entering into his guilty plea.[36]

31. The Court accepted Williams' guilty plea only after finding that he entered into his plea knowingly, intelligently and voluntarily.[37]

32. As confirmed by the plea colloquy, Plea Agreement and Truth-in-Sentencing Guilty Plea Form, Williams entered his plea knowingly, intelligently and voluntarily. Williams has not presented any clear, contrary evidence to call into question his testimony at the plea colloquy, Plea Agreement or answers on the Truth-in-Sentencing Guilty Plea Form.

33. Williams' valid guilty plea waived his right to challenge any alleged errors, deficiencies or defects occurring prior to the entry of his plea, even those of

---

[34] January 6, 2020 Plea Transcript, at pgs. 16-17; Plea Agreement dated January 6, 2020.
[35] January 6, 2020 Plea Transcript, at pgs. 25-26.
[36] January 6, 2020 Plea Transcript, at pgs. 17-21; Plea Agreement dated January 6, 2020; Truth-in-Sentencing Guilty Plea Form dated January 6, 2020.
[37] January 6, 2020 Plea Transcript, at pg. 26.

constitutional proportions.[38]  Williams' valid guilty plea waived any right to test the strength of the State's evidence, the right to hear and question witnesses, the right to present evidence in his own defense, and the right to appeal, if convicted.

34.    All of Williams' claims presented herein stem from allegations of defects, errors, misconduct and deficiencies which existed at the time of the entry of the plea and sentence.  All of Williams' claims presented herein were waived when he knowingly, freely and intelligently entered his plea. [39]

## Ineffective Assistance of Counsel Claims

35.    Williams has asserted a number of ineffective assistance of counsel claims in his Rule 61 motion.

36.    In order to prevail on an ineffective assistance of counsel claim, the defendant must meet the two-pronged *Strickland* test by showing that:  (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[40]  The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[41]

---

[38] *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).
[39] See, *Mills v. State,* 2016 WL 97494, at *3 (Del.).
[40] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).
[41] *Id.* at 687-88, 694.

37.     In the context of a plea challenge, it is not sufficient for the defendant to simply claim that his counsel was deficient.  The defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[42]  The burden of proving ineffective assistance of counsel is on the defendant.[43]  Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[44]

38.     The United States Supreme Court has reiterated the high bar that must be surmounted to prevail on an ineffective assistance of counsel claim.[45] The United States Supreme Court cautioned that in reviewing ineffective assistance of counsel claims in the context of a plea bargain, the court must be mindful of the fact that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."[46]

37.     It is important to note that Williams derived a significant benefit from pleading guilty to just two counts in the indictment since he was facing a number of additional felony charges.  Of those two counts to which he pled guilty, one was

---

[42] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997); *Premo v. Moore,* 131 S.Ct. 733, 739-744 (2011).
[43] *Oliver v. State,* 2001 WL 1751246 (Del.).
[44] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[45] *Premo v. Moore,* 131 S.Ct. 733, 739-744 (2011).
[46] *Id.*, at pg.  741.

amended from first-degree robbery, which carried a minimum mandatory prison term of 6 years, to second-degree robbery, which did not carry a minimum mandatory prison term. If convicted at trial, Williams was facing a 19-year minimum mandatory prison sentence and a maximum prison sentence of up to over 100 years of incarceration.

38. As part of the plea, the State agreed to cap its sentence recommendation to 7 years of prison time. Due to trial counsel's advocacy, the Court sentenced Williams to only 5 years of prison time- the minimum mandatory prison term on the PFBPP charge, two years less than that requested by the State.

39. Williams' plea represented a rational choice given the pending charges, the evidence against him, and the possible sentences he was facing if convicted at trial.

40. It is hard to envision how trial counsel's representation of Williams could be deemed deficient in any respect given the ultimate result achieved in light of the facts and circumstances presented herein.

## SPECIFIC CLAIMS RAISED BY WILLIAMS

41. Each specific claim raised by Williams will be addressed in turn.

## Claims One and Four: Claims Related to Mental Health

42. The first and fourth claims raised by Williams deal with the fact that a mental health evaluation was not conducted. Williams claims in Count I that his guilty plea was illegal because he never underwent a mental health evaluation. In Count IV, he

claims that his trial counsel was ineffective in failing to request a mental health evaluation.

43.    In addition to having waived these claims, these claims are also procedurally barred and without merit.

44.    Count I that his guilty plea was illegal because he never underwent a mental health evaluation is procedurally barred pursuant to Superior Court Criminal Rule 61(i)(3). Williams was required to raise this claim on direct appeal if he genuinely believed the claim had any merit. He failed to do so. It is now procedurally barred.

45.    Moreover, these claims are without merit.

46.    In the Truth-in-Sentencing Guilty Plea Form, Williams stated that he had been a patient in a mental hospital.[47] During his plea colloquy, Williams explained to the Court that he was diagnosed with bipolar disorder.[48] He informed the Court that he served a portion of his sentence for a robbery conviction in Pennsylvania in a mental institution because he was on medication at the time that required him to be treated at the facility.[49] **The Court expressly asked Williams: "Does that medication, or your diagnosis of being bipolar, affect your ability to enter into this guilty plea today?" To which Williams responded: ". . .No."[50] The Court then stated: "Okay. I just want to make sure that you understand what you're pleading to**

---

[47] Truth-in-Sentencing Guilty Plea Form dated January 6, 2020.
[48] January 6, 2020 Plea Transcript, at pgs. 22-23.
[49] January 6, 2020 Plea Transcript, at pgs. 21-23.
[50] January 6, 2020 Plea Transcript, at pg. 23.

**today and that you understand these forms that you have signed; is that correct?" To which Williams responded: "Yes."[51]**

47. Moreover, a review of the plea colloquy reflects that Williams appeared fully oriented, properly responded to the questions, asked appropriate questions, and presented with a clear thought process. He did not show any signs of an impaired ability to enter into the plea.

48. Turning next to Claim Four, that trial counsel was ineffective by failing to pursue a mental health evaluation to determine his competence, this claim is also without merit.

49. In Trial Counsel's Affidavit in response to this claim, trial counsel advises that she did not seek a competency evaluation because she never had any competency concerns.[52] Counsel explained that Williams was always fully oriented, cooperative and responded to trial counsel's questions and statements, he asked appropriate questions and otherwise assisted trial counsel with his defense.[53]

50. Additionally, trial counsel notes that she utilized the services of a Forensic Social Specialist ("FSS") from the Office of Defense Services who issued a Mitigation Report provided to the State and the Court for sentencing.[54] In the

---

[51] *Id.*
[52] Cr.ID. No. 1906010188A- D.I. 61, at pgs. 1-2.
[53] Cr.ID. No. 1906010188A- D.I. 61, at pgs. 1-2.
[54] Cr.ID. No. 1906010188A- D.I. 61, at pgs. 1-2; Exhibit A- Mitigation Report.

Mitigation Report, the FSS likewise noted that when she met Williams his thinking was clear and his thought process was within normal limits.[55]

51.    A mental health evaluation could not have affected the sentence imposed by the Court.  Williams received a five year minimum-mandatory prison sentence on the PFBPP charge, which was the lowest possible sentence that Williams could have received.  He received a fully suspended prison sentence on the robbery charge.  The lowest possible sentence that Williams could have received on the two charges that comprised his plea agreement was a five year minimum-mandatory sentence and that was the sentence imposed.  A mental health evaluation would not have produced any better result.

52.    There was no need for trial counsel to request a competency evaluation because there was never any issue as to his competency. Neither trial counsel nor the FSS had any reason to believe that Williams was incompetent or unable to understand the charges against him or the guilty plea agreement.  Likewise, at the plea colloquy Williams appeared to be fully oriented with a clear and unimpaired thought process.

---

[55] Cr.ID. No. 1906010188A- D.I. 61, at pgs. 1-2, Exhibit A at pgs. 3-4 ("Williams was fully oriented, cooperative during our interview and served as a good historian. . . .His thought process was clear and thought content was within normal limits.  He did not report or exhibit any signs of perceptual disturbance. . ." ).

14

53.     There is no merit to Williams' claims that a mental health evaluation should have been conducted nor that he suffered any alleged prejudice from the absence of any such evaluation.

## Claim Two:  Counsel Ineffective For Not Filing Motion to Dismiss

54.     Williams claimed that counsel was ineffective for failing to file a motion to dismiss on the grounds that the Indictment had been improperly amended.

55.     First, this claim was waived at the time he accepted his plea.

56.     Second, in addition to having waived this claim, this claim is without merit. There was no amendment to Williams' Indictment.   The complaint is really that the Indictment included more charges than the charges he faced at the time of his arrest.

57.     Trial counsel, in a letter dated October 23, 2019, explained to Williams that there was no basis to file a motion to dismiss because the Indictment contained more charges than the charges at the time of his arrest.  There was no prohibition from the State increasing the charges against him.[56]

58.     Williams raised this issue during an ineffective assistance of counsel hearing on December 17, 2019 and was informed by the Court that there was nothing illegal or unlawful or unconstitutional about the State's charging decision or the Grand Jury process.[57]  The Court advised Williams that there was nothing abnormal or unlawful

[56] Cr.ID. No. 1906010188A- D.I. 59 (Appendix to Motion to Withdraw), at pg. A090.
[57] December 17, 2019 Ineffective Counsel Hearing Transcript, at pgs. 14-16.

15

about the charges in the Indictment exceeding the charges that a defendant faced at the time of his arrest.[58]

59.  An ineffective assistance of counsel claim based on the failure to object to evidence is without merit if trial counsel lacked a legal or factual basis to object to the evidence.[59]  This claim is without merit.

### Claim Three- Claim of Plea Coercion

60.  The third claim that Williams raised is that he was misled into his plea agreement.  Williams contends that he did not understand that he was pleading to two charges:  PFBPP and Robbery in the Second Degree.  He also contends that he was coerced into signing the plea.

61.  The record belies Williams' claim.  The Plea Agreement, Truth-in-Sentencing Form and plea colloquy reflect that Williams fully understood that he was pleading to two charges, PFBPP and Robbery in the Second Degree, that he was satisfied with his counsel's representation, that he understood the charges and sentences he was facing, and that nobody was forcing him to enter the plea. Williams is bound by his answers on the plea paperwork and at the plea colloquy.

62.  The record reflects that the Court conducted a thorough plea colloquy to determine that Williams' decision to plead guilty was knowing, intelligent and voluntary.  The record unequivocally established that Williams entered into his plea

---

[58] *Id.*
[59] *State v. Exum,* 2002 WL 100576, at *2 (Del.Super.), *affirmed,* 2002 WL 2017230, at *1 (Del.).

16

voluntarily and that he was not operating under any misapprehension or mistake as to the charges he was pleading guilty to and the sentences he was facing.

63.     It should also be emphasized that Williams made a prudent decision to accept the plea based on the pending charges, the evidence against him and the possible sentence he was facing if convicted at trial.

64.     Statements made by the defendant during a plea colloquy are presumed to be truthful in the absence of clear and convincing evidence to the contrary.  The record is devoid of any evidence to support Williams' present contention that his plea was not knowingly, intelligently and voluntarily entered.  This claim is without merit.

**Claim Five- PFBPP Sentence was Improperly Enhanced**

65.     Williams next claims that his PFBPP sentence was improperly enhanced.  He claims that because his prior conviction in Pennsylvania for robbery was more than ten years old, his minimum mandatory sentence should have been 3 years, not 5 years, thereby violating his constitutional protections against Double Jeopardy.

66.     This claim is without merit.  Williams was properly sentenced to a 5 year minimum mandatory prison sentence on the PFBPP conviction.

67.     For a PFBPP conviction, the minimum mandatory sentence is five years at Level V if the defendant is convicted of PFBPP within ten years of the date of

17

conviction for any violent felony *or the date of termination of all periods of incarceration or confinement imposed. . . , whichever is the later date.*[60]

68.    Williams was convicted of the Pennsylvania robbery charge (a violent felony[61]) on August 11, 2008.[62]   The Pennsylvania robbery occurred on July 13, 2007.  On August 11, 2008, Williams was sentenced in Pennsylvania to a minimum of 3 years incarceration and a maximum of 6 years, followed by 4 years of probation.[63]   Williams was incarcerated beginning July 17, 2007, and if he was released after serving only his three year minimum mandatory sentence, he would have been released on or about July 2010.[64] He committed the subject PFBPP offense on July 15, 2019, at best, 9 years after his release in Pennsylvania from his prior robbery conviction.  Of course, if he served more than the three year minimum-mandatory time imposed, the time frame between his release from incarceration in Pennsylvania and the subject offense would be even less than 9 years.

69.    Since, at best, only 9 years passed between Williams' release from confinement in his Pennsylvania robbery conviction and when he committed the PFBPP offense in Delaware,  Williams was subject to the enhanced sentencing on the PFBPP conviction requiring a minimum mandatory prison sentence of 5 years.

---

[60] See, 11 *Del. C.* § 1448(e)(1)(b).
[61] See, 11 *Del. C.* § 4201.
[62] Cr.ID. No. 1906010188A- D.I. 59 (Appendix to Motion to Withdraw), at pg. A257; Cr.ID. No. 1906010188A- D.I. 61, at pgs. 6-7; Cr.ID. No. 1906010188A- D.I. 57, at pgs. 23-25.
[63] *Id.*
[64] *Id.*

70. This claim is without merit.

## Claim Six- The Claim of Suggestive Identification

71. Williams' final claim was that the use of a single photo displayed to the victim to identify him as opposed to using a photo array constituted an improper suggestive identification.

72. Williams filed a suppression motion raising this claim, a hearing was held on the motion, and after a full and thorough review of the claim, the suppression motion was denied.[65]

73. First, this claim was waived at the time of the entry of the plea. Williams could have elected to proceed to trial thereby preserving the right to test the State's case and preserving his right to appeal the trial court's denial of his suppression motion on this issue. He chose instead to waive those rights and to accept the plea offer.

74. Second, this claim is procedurally barred. It was already formerly adjudicated and is now procedurally barred pursuant to Superior Court Rule of Criminal Procedure 61(i)(4). The Delaware Superior Court already rejected Williams' suppression issues, which are the underlying basis for his ineffective assistance of counsel claims.

---

[65] *State v. Williams,* 2020 WL 240206 (Del.Super. 2020).

19

75. Williams has failed to make any concrete allegations of actual prejudice and substantiate them. Williams' ineffective assistance of counsel claims are without merit.

76. Williams' claims raised herein were waived when he voluntarily entered into his guilty plea. Some of the claims are also procedurally barred. All of the claims raised herein are without merit.

## CONCLUSION

77. After a careful review of the record, the Court concludes that Williams' Rule 61 motion is without merit. The Court is also satisfied that Williams' Rule 61 counsel made a conscientious effort to examine the record and the law and has properly determined that Williams does not have a meritorious claim to be raised in his Rule 61 motion.

78. In light of the absence of any meritorious postconviction claims, Williams' Motion for Postconviction Relief should be DENIED, and Rule 61 counsel's motion to withdraw should be GRANTED.

**IT IS SO RECOMMENDED.**

　　　　　　　　　　　　　　　　　　 /S/ Lynne M. Parker
　　　　　　　　　　　　　　　　　　Commissioner Lynne M. Parker


cc:　　Prothonotary
　　　　Monika G. Germono, Esquire
　　　　Mr. Paul R. Williams

20